**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WILFRED H.,

                Petitioner,

v.                                    CIVIL ACTION NO.  2:25-cv-00048

JONATHON FRAME, *Superintendent,
Mt. Olive Correctional Complex*,

                Respondent.

**MEMORANDUM OPINION AND ORDER**

On January 24, 2025, the Petitioner filed his *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Document 1) together with the *Petitioner's Memorandum in Support of his Petition for Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254* (Document 2).  Filed in response, on April 21, 2025, was the *Respondent's Motion for Summary Judgment* (Document 10) and the *Respondent's Memorandum in Support of Motion for Summary Judgment* (Document 11).

By *Standing Order* (Document 4) entered on January 27, 2025, this action was referred to the Honorable Joseph K. Reeder, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.  On January 27, 2026, Judge Reeder issued a Proposed Findings and Recommendation ("PF&R"), recommending that the Petitioner's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus*

*by a Person in State Custody* be denied, the *Respondent's Motion for Summary Judgment* be granted, and this action be dismissed with prejudice.

Objections to the Magistrate Judge's PF&R were originally due by February 10, 2026. By *Order* (Document 19) entered on February 9, 2025, the objection deadline was extended to March 2, 2026. The *Petitioner's Objections to Proposed Findings and Recommendations* (Document 20) was timely filed on March 2, 2026, and on March 13, 2026, the *Respondent's Response to Petitioner's Objections to Proposed Findings and Recommendation* (Documents 21) was filed. For the reasons stated herein, the Court finds that the objections should be overruled, and the PF&R should be adopted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Reeder's PF&R sets forth the procedural and factual history surrounding the Petition and resulting proceedings. The Court provides a summary of the facts contained in the PF&R, as well as any facts not contained therein, relevant to the objections. In October 2014, the Petitioner, Wilfred H., was indicted by a grand jury on sixty-one counts, including thirty-seven counts of first-degree sexual assault, twenty-three counts of third-degree sexual assault, and one count of display of obscene matter to a minor. The indictment alleged that from November 16, 2007, through July 15, 2010, the Petitioner engaged in repeated sexual acts with the victim, M.A.H., beginning when she was nine years old. The Petitioner did not challenge the sufficiency of the indictment, but rather, moved for a bill of particulars. The Petitioner's motion was resolved by a stipulation in which the State clarified that although the allegations contained in Counts 4, 5 and 6 were exactly the same, it would seek to prove three separate instances of oral sexual intercourse that occurred between the Petitioner and the victim during the charged time period.

2

Prior to trial, the Petitioner provided notice of his intention to cross examine the victim about a social media post in which she responded to a question by stating that her oldest sexual partner was 17 years old.  The Petitioner filed a pretrial motion seeking to use the social media post for impeachment purposes.  The circuit court held a hearing and concluded that it would not be permissible to allow the Petitioner to question the victim about her oldest sexual partner.  The circuit court noted that the rape shield statute only allows evidence of a victim's previous sexual partner "if the victim makes his or her previous sexual conduct an issue" and "agree[d] with the State that [the victim's] statement. . . would not be responsive to the question" because the court "would not expect her response to include a reference to forcible compulsion."  (Document 8-1 at 68-69, quoting W. Va. Code 61-8B-11(b).)

The Petitioner's first jury trial commenced on January 28, 2016, but ultimately resulted in a mistrial because the jury was unable to reach a unanimous verdict.  The Petitioner's second jury trial commenced on August 1, 2016.  During the trial, a picture of a topless female whose face was blurred was introduced during the victim's testimony and she identified herself as the person pictured.  After the State rested its case, the Petitioner moved for a mistrial, arguing that the State failed to establish a proper chain of custody for the picture.  The circuit court found that the picture was inadmissible due to deficiencies in the chain of custody.  However, the circuit court denied the Petitioner's motion for a mistrial and, instead, issued a curative instruction directing the jury to disregard the picture and the identification.  The prosecutor sought clarification regarding the court's ruling, specifically about whether, during closing argument, she could refer to other pictures obtained during the police investigation and the Petitioner's responses to questions during a pre-arrest interview relating to allegations that he had pictures of the victim.  The circuit court

3

responded that such references would not violate its order regarding the topless picture. During

closing argument, the prosecutor made the following comments:

> I asked you in the very beginning to listen very, very closely to the defendant's interview. You heard the defendant's interview, portions of it, at least. And you also got to hear the impression that the interview had on [the interviewing officer].
>
> You heard the defendant's voice inflection on his denials. You heard him not outright deny that pictures were taken. He just denied having them. In fact, he stated, "I don't have none of those pictures." And then later said, "I don't have none."
>
> You heard him basically answer questions with other questions.

(Document 8-5 at 8.)

During deliberations, the jury submitted a question to the circuit court asking why Counts

4, 5, and 6[1] of the indictment were identical. The court, after discussion with counsel and without

objection, responded that the counts charged three instances of oral sexual intercourse during the

charged time period, provided a hypothetical involving multiple charges of speeding within a

single month, and explained that more specific information would have been included in a bill of

particulars, which was not provided to the jury. The jury ultimately convicted the Petitioner of

five counts of first-degree sexual assault, one count of display of obscene material to a minor, and

two counts of third-degree sexual assault. The jury did not reach a verdict on the remaining counts.

The Petitioner was sentenced to an aggregate term of fifty to two hundred years imprisonment

followed by supervised release.

---

[1] When the jury posed the question, they referenced Counts 3, 4, and 5, but upon clarification by the circuit court, they were referring to Counts 4, 5, and 6. (Document 8-5 at 72.)

4

The Petitioner appealed his conviction, which was ultimately affirmed by the West Virginia Supreme Court.[2] The Petitioner subsequently sought habeas relief in the state circuit court. The circuit court denied relief following a hearing in which the Petitioner's trial counsel testified. On appeal, the West Virginia Supreme Court affirmed the denial of habeas relief.[3]

On January 24, 2025, the Petition at issue here was filed. The Petitioner asserts multiple grounds for habeas relief, including (1) constitutional defects with the indictment resulting in an inability to plead double jeopardy, (2) ineffective assistance of counsel, (3) violations of the Confrontation Clause of the Sixth Amendment arising from rape shield law rulings, and (4) violations of the Petitioner's right to remain silent under the Fifth and Fourteenth Amendments arising from prosecutorial comments made during closing argument. The Respondent filed a motion for summary judgment.

In his PF&R, Judge Reeder found that the Petitioner was not entitled to habeas relief. As it relates to the insufficiency of the indictment, Judge Reeder concluded that the West Virginia Supreme Court's decision was not contrary to nor an unreasonable application of clearly established federal law. Specifically, Judge Reeder found that there was no controlling Supreme Court precedent as to the specific issue presented in this case and that it was reasonable for the West Virginia Supreme Court to conclude that the indictment and the bill of particulars together resolved any notice or double jeopardy issues. Judge Reeder further concluded that even if the indictment could have been more specific, the Petitioner could not demonstrate prejudice.

---

[2] *See State v. Wilfred H.*, No. 17-0170, 2018 WL 3005947 (W. Va. June 15, 2018) (memorandum decision) ("*Wilfred H. I*").
[3] *See Wilfred H. v. Ames*, No. 22-0506, 2024 WL 313316 (W. Va. Jan. 25, 2024) (memorandum decision) ("*Wilfred H. II*").

As to the Petitioner's claim of ineffective assistance of counsel, Judge Reeder concluded that the West Virginia Supreme Court did not unreasonably apply *Strickland*, finding that the Petitioner's claim "largely rest[s] on the premise that counsel should have been more successful; that is, that different objections, alternative strategies or more favorable rulings would have produced a better outcome," which is not sufficient to demonstrate deficient performance. Also, Judge Reeder found that the Petitioner could not demonstrate prejudice. (Document 17 at 9.)

Judge Reeder further concluded that the Petitioner was not entitled to relief on his claim based on the Confrontation Clause, finding that the circuit court held a hearing, "evaluated the relevance of the evidence, and weighed its probative value against the risk of unfair prejudice under the rape-shield statute." (*Id.* at 10.) Judge Reeder also found that because the circuit court's decision to preclude the Petitioner's proposed questioning did not prevent him from questioning the victim about other matters relating to credibility and the charged conduct and did not otherwise prohibit him from putting on a defense, it was reasonable for the West Virginia Supreme Court to affirm the circuit court's decision. However, regarding the Petitioner's claim that the prosecutor made improper comments during closing argument, Judge Reeder did not address the issue. He, instead, addressed issues related to the Fourth Amendment, Brady violations, alleged spoilation of evidence, and cumulative error.

The Petitioner submitted objections to Judge Reeder's PF&R, specifically relating to the sufficiency of the indictment, ineffective assistance of counsel, the Confrontation Clause, and the prosecutor's improper statements during closing argument.

6

## STANDARD OF REVIEW

*A.    Objections to PF&R*

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).  When reviewing portions of the PF&R de novo, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

*B.    Motions Pursuant to 28 U.S.C. § 2254*

28 U.S.C. § 2254 provides for federal review of a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Petitioners must exhaust all available state remedies.  *Id.* § 2254(b)(1).  Furthermore:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

(2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2).   Factual determinations made by a state court are presumed correct, and petitioners must rebut that presumption by clear and convincing evidence.  *Id.* § 2254(e)(1).

Federal review of motions brought by prisoners in state custody under 28 U.S.C. § 2254 is highly deferential.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Robinson v. Polk*, 438 F.3d 350, 354-55 (4th Cir. 2006).   The Supreme Court explains that the "contrary to" clause of § 2254(d)(1) means that "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  The "unreasonable application" clause of that section means that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"A state court's decision is unreasonable where it is 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.'"  *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  If a state court applied the appropriate legal standard in a reasonable manner, the federal court may not grant habeas relief even if it would have reached a different conclusion. *Williams*, 529 U.S. at 406. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original).

8

**DISCUSSION**

The Petitioner asserts several objections to Judge Reeder's PF&R. The Petitioner contends that Judge Reeder erred in finding that he is not entitled to habeas relief and that summary judgment is appropriate with respect to his claims related to the sufficiency of the indictment, ineffective assistance of counsel, and the Confrontation Clause. The Petitioner further contends that Judge Reeder erred in failing to address his claim related to improper prosecutorial comments made during closing argument.

### A.    Sufficiency of the Indictment

The Petitioner asserts three reasons why Judge Reeder's findings, related to the sufficiency of the indictment, are erroneous. First, the Petitioner argues that Judge Reeder failed to apply *Russel v. United States*, 369 U.S. 749 (1962) to the facts of this case, and instead interpreted Supreme Court precedent too narrowly and assumed that the Sixth Circuit case the Petitioner also relied upon, *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), was the only case on point. Second, the Petitioner argues that Judge Reeder assumed the bill of particulars resolved any issue related to Counts 4, 5, and 6 being identical, when in actuality, it did not resolve the issue. The Petitioner contends that due to Judge Reeder's assumption about the bill of particulars, he failed to analyze whether it actually resolved the issue with the identical counts, and to illustrate this point, the Petitioner relies on *Valentine*. Lastly, the Petitioner asserts that Judge Reeder erroneously found that he cannot demonstrate prejudice because the jury did not return a guilty verdict on all counts.

The Petitioner has not demonstrated a clearly established federal rule of law as it pertains to the particular issue presented in this case. There is no Supreme Court case, as Judge Reeder noted, that stands for the proposition that a state indictment involving multiple offenses of child

9

sexual abuse occurring over an extended period must allege each individual act "with temporal and factual specificity." (Document 17 at 6.) The Petitioner, nevertheless, points to *Russel*, asserting that Judge Reeder failed to consider it. However, *Russel* does not directly address the issue related to the level of specificity required of indictments alleging multiple offenses of child sexual abuse that occurred over an extended period. Rather, *Russel* stands only for "the general proposition that a defendant must have adequate notice of the charges against him." *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam). The Supreme Court has "cautioned the lower courts. . . against 'framing [its] precedents at such a high level of generality'" when conducting habeas review under § 2254(d)(1). *Id.* at 6 (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)). Because *Russel* does not directly address the issue in this case, the Petitioner, instead, relies heavily on a Sixth Circuit opinion. *See Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). As Judge Reeder correctly recognized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" nor does it establish out of circuit precedent. *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)). Moreover, as the Supreme Court has explained, "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the] Court has not announced." *Lopez*, 574 U.S. at 7 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam)).

Thus, the Petitioner's reliance on both *Russel* and *Valentine* is insufficient to demonstrate a clearly established federal rule of law that would warrant granting him habeas relief. Therefore, the objections related to the sufficiency of the indictment should be overruled.[4]

---

[4] Because there is no clearly established federal law as it relates to the specific issue presented in this case, the Court need not address the Petitioner's objection relating to the bill of particulars. Moreover, given that the Petitioner did

10

###### B.     Ineffective Assistance of Counsel

The Petitioner objects to Judge Reeder's findings and recommendation related to his claim of ineffective assistance of counsel.  Specifically, the Petitioner asserts that rather than address the claim that he asserted, Judge Reeder, instead, addressed the Petitioner's claim as if it was a general claim, stating that his claim "is that counsel 'should have been more successful; that is, different objections, alternative strategies or more favorable rulings.'"  (Pet.'s Objs. at 8, citing Document 17 at 9.)  However, the Petitioner contends that he did not make a general claim of ineffective assistance of counsel, but rather, asserted a claim pertaining to his counsel's failure to object to the circuit court's instruction to the jury relative to Counts 4, 5, and 6.

The Supreme Court set forth the clearly established law for claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  A criminal defendant claiming ineffective assistance of counsel must demonstrate that (a) "counsel's representation fell below an objective standard of reasonableness," and (b) the defense was actually prejudiced by the deficient performance.  *Strickland*, 466 U.S. at 687-88, 692.  Courts must apply a "strong presumption" that counsel's representation "falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Review of a state court's decision regarding ineffective assistance of counsel is "doubly deferential" under § 2254(d)(1*)*.  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (*quoting Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied *Strickland* incorrectly. Rather, [the petitioner] must show that [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

---

not address the issue of prejudice, related to this claim, in his Petition and that issue was raised *sua sponte* by Judge Reeder, the Court also need not address the objection pertaining to that issue.

11

The Petitioner specifically complains about his counsel's failure to object to the circuit court's instruction to the jury regarding Counts 4, 5, and 6. However, upon review, there is no indication that counsel's failure to object fell below an objective standard of reasonableness. During an omnibus hearing, Petitioner's counsel testified that he did not believe that the issue related to the similarly worded counts was "going to matter tremendously" because he thought the jury was "either going to believe [the Petitioner], or believe the alleged victim." (Document 8-5 at 228.)   In addition, when asked about the circuit court's instruction, Petitioner's counsel testified that he understood the instruction to mean that if the jury "find[s] that it happened three (3) different times, then they can make three (3) separate findings of guilt. So, you know, I thought that that, more or less, covers or disallows the jury from making three (3) findings of guilt based on a single incident." (*Id.* at 234.)  As noted by the West Virginia Supreme Court, such testimony clearly indicates the thought process and strategy of Petitioner's counsel.   Relying on this testimony, the West Virginia Supreme Court concluded that failure to object to the instruction was not a basis on which to find that counsel's representation fell below an objective standard of reasonableness.  It cannot credibly be said that the West Virginia Supreme Court's decision on this issue is unreasonable.

Furthermore, the Petitioner is unable to demonstrate that he was prejudiced by his counsel's failure to object.  As the West Virginia Supreme Court observed, the circuit court instructed the jury that Counts 4, 5, and 6 "charg[ed] three occurrences" during the alleged time period, and that "the state of West Virginia must overcome the presumption of innocence and prove beyond a reasonable doubt" each element of the charged offenses. (Document 8-5 at 73-74.) Given that the circuit court instructed the jury that the State must prove three separate occurrences beyond a

12

reasonable doubt before the Petitioner could be convicted under Counts 4, 5, and 6, it was not unreasonable for the West Virginia Supreme Court to conclude that the Petitioner was not prejudiced by his counsel's failure to object to the circuit court's instruction.

The West Virginia Supreme Court's decision did not involve an unreasonable application of law or an unreasonable determination of facts. Therefore, the Petitioner's objection related to his claim of ineffective assistance of counsel should be overruled.

C.      *Confrontation Clause – Limits on Examination of the Victim*

Further, the Petitioner objects to Judge Reeder's findings and recommendation related to the circuit court limiting the Petitioner's ability under West Virginia's rape-shield law to cross-examine the victim about a social media post regarding the age of her oldest sexual partner. The Petitioner asserts that Judge Reeder failed to apply a case-by-case balancing test under *Rock-Lucas*, and that the circuit court and the West Virginia Supreme Court failed to apply such a test, as well.[5] The Petitioner contends that he had a strong interest in cross-examining the victim about her social media post because it is both exculpatory and contradictory to the allegations, while the State's interest under the rape shield statute was diminished given that the social media post was public. The Petitioner further argues that the decision by the circuit court to preclude the Petitioner from cross-examining the victim about her oldest sexual partner was arbitrary and disproportionate, as well as "based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding." (Pet.'s Objs. at 14, citing 28 U.S.C. § 2254(d)(2).)

---

[5] The Petitioner relies on *Barbe v. McBride*, 521 F.3d 443 (4th Cir. 2008), which recognized both *Michigan v. Lucas*, 500 U.S. 145 (1991) and *Rock v. Arkansas*, 483 U.S. 44 (1987) as establishing a case-by-case balancing test.

13

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)), but, as the Supreme Court has explained, that right is "not without limitation." *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). Under the appropriate circumstances, the right to present a complete defense may "bow to accommodate other legitimate interests in the criminal trial process." *Id.* (quoting *Rock*, 483 U.S. at 55); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (stating that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials" (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998))). "Only rarely h[as the Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, (2013) (per curiam) (explaining that those rare circumstances involved the court holding that a "rule did not rationally serve any discernible purpose," a rule was "arbitrary," the "State did not even attempt to explain the reason for its rule," and a "rule could not be rationally defended").

The Petitioner asserts that Judge Reeder, the circuit court and the West Virginia Supreme Court all failed to engage in a case-by-case balancing test as required under *Rock-Lucas*. However, neither *Lucas* nor *Rock* held that a court must apply a case-by-case balancing test prior to the enforcement of a state's rape-shield law. *See Lucas*, 500 U.S. at 152-53 (holding that its Sixth Amendment jurisprudence did not support a per se rule that prohibited the enforcement of a rule that excluded evidence of a prior sexual relationship between a victim and a defendant if the defendant failed to provide pretrial notice); *Rock*, 483 U.S. at 61 (holding that a per se rule

14

excluding all hypnotically enhanced testimony by a defendant was an arbitrary restriction on the right to testify due to the State failing to justify such an exclusion through clear and convincing evidence demonstrating that all hypnotically enhanced testimony is unreliable).  Again, for this claim, the Petitioner relies on circuit precedent which recognizes a balancing test under those cases, (See *Barbe*, 521 F.3d at 458), but which as previously explained, cannot be used to establish a clearly established federal law.  *See Glebe*, 574 U.S. at 24; *Lopez*, 574 U.S. at 7.

Moreover, the Supreme Court, in *Nevada v. Jackson*, 569 U.S. 505 (2013) (per curiam), when analyzing a petition for habeas relief, rejected the idea that its "cases clearly establish that the Constitution requires a case-by-case balancing of interests before" the notice rule at issue in that case could be enforced.  569 U.S. at 510.  The Supreme Court explained that the court in *Lucas* "did not even suggest, much less hold, that it is unconstitutional to enforce such a rule unless a case-by-case balancing of interests weighs in favor of enforcement," but rather "express[ed] no opinion as to whether or not preclusion was justified in th[at] case."  *Id.* at 511.  Because none of the Supreme Court's cases stand for the proposition that a case-by-case balancing test must be performed before a rule excluding certain evidence, such as evidence of a victim's previous sexual partners, can be enforced, there is no clearly established federal law requiring a case-by-case balancing test.  *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (per curiam) (explaining that "[a] legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of" the Supreme Court (citing *Carey v. Musladin*, 549 U.S. 70, 74-77 (2006))).

In any event, although the Supreme Court does not require state courts to engage in a case-by-case balancing test, it does require state courts to ensure that a restriction does not "'infring[e] upon a weighty interest of the accused' and [is not] 'arbitrary or disproportionate to the purposes

15

[it is] designed to serve.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Scheffer*, 523 U.S. at 308) (internal quotations omitted). In addition to asserting that the state courts were required to engage in a balancing test, the Petitioner asserts that the state circuit court restricting his ability to cross-examine the victim about her oldest sexual partner was arbitrary and disproportionate.

The restriction placed on the Petitioner's right to confront the victim by the circuit court under West Virginia's rape shield statute was not "arbitrary" or "disproportionate." The Supreme Court has recognized that rape shield statutes "represent[] a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Lucas*, 500 U.S. at 150. Additionally, West Virginia's rape-shield statute states that its purpose is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process," as well as to "encourage[] victims of sexual misconduct to institute and participate in legal proceedings against alleged offenders." W. Va. R. Evid. 412 cmt.; *see also State v. Guthrie*, 518 S.E.2d 83, 96 (W. Va. 1999) ("[T]his State's rape shield statute was enacted to protect the victims of sexual assault from humiliating and embarrassing public fishing expeditions into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders."). As such, it cannot be said that West Virginia's rape shield statute is arbitrary.

Furthermore, "'trial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment,

16

prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Lucas*, 500 U.S. at 149 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Here, the circuit court held a hearing to determine whether to prohibit the Petitioner from questioning the victim about her response in the social media post regarding her oldest sexual partner. During the hearing, the circuit court, in addition to noting that West Virginia's rape shield statute would only permit such questioning "if the victim makes his or her previous sexual conduct an issue," concluded that the Petitioner's proposed questioning was inadmissible, explaining that the victim's statement "would not be responsive to the question" because the victim would not be expected to include a "reference to forcible compulsion." (Document 8-1 at 69.) As indicated by Judge Reeder, the circuit court "evaluated the relevance of the evidence, and weighed its probative value against the risk of unfair prejudice under the rape-shield statute." (Document 17 at 10.) By engaging in such an exercise when ruling to preclude the Petitioner's proposed questioning under the evidentiary rules and West Virginia's rape shield statute, the circuit court was acting well within its discretion.[6]

Moreover, as noted by Judge Reeder, the restriction on the Petitioner's ability to question the victim about her previous sexual partner did not prevent the Petitioner from questioning her about other matters related to her credibility and the charged conduct. *See Van Arsdall*, 475 U.S. at 679 ("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might

---

[6] While affirming the circuit court, the West Virginia Supreme Court found that the victim's previous sexual conduct was not at issue and that the victim's statement in her social media post was not an exculpatory or contradictory statement. *See Wilfred H. I*, No. 17-0170, 2018 WL 3005947, at *7 (W. Va. June 15, 2018). The West Virginia Supreme Court further found that the Petitioner's proposed questioning is "exactly the type of questioning the rape shield law was designed to limit." *Id.*

wish." (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam))).   The restriction, therefore, did not prevent the Petitioner from putting on a defense, and, therefore, it cannot be said that the restriction was disproportionate to the purpose of West Virginia's rape shield statute.[7]  It was not unreasonable for the West Virginia Supreme Court to affirm the circuit court decision to exclude the Petitioner's proposed questioning regarding the age of the victim's previous sexual partner.  Therefore, the Petitioner's objection should be overruled.

### D.        Prosecutor's Improper Statements During Closing Arguments

Lastly, the Petitioner objects to improper comments made during the prosecutor's closing argument, asserting that Judge Reeder failed to address that issue.  The Petitioner argues the prosecutor improperly made statements about the Petitioner's silence and failure to testify.  The Petitioner asserts that the prosecutor's comments consisted of her mentioning that he did "not outright deny that pictures were taken." (Pet.'s Mem. at 30.)  The Petitioner, relying on *Griffon v. California*, 380 U.S. 609 (1965), contends that such comments improperly reference the Petitioner's refusal to testify and right to pretrial silence by "implying that the Petitioner, if he were innocent, would take the stand and deny that he took pictures of the victim, and that he would have denied that pictures were taken by him when he was interviewed."  (Pet.'s Mem. at 30.)  Although Judge Reeder did not address this issue in his PF&R, because it was raised in the *Petition*, this Court will address the issue.

---

[7] Although the Petitioner asserts that the rape shield statute's purpose is diminished given that the victim's social media post is public, excluding the Petitioner's proposed questioning serves other purposes of the rape shield statute, such as protecting the victim from abuse and encouraging her to participate in trial against the alleged offender.

18

During closing argument, the prosecutor referred to portions of a recorded, noncustodial interview of the Petitioner, conducted by police prior to his arrest, that was presented to the jury. Specifically, the prosecutor made the following comments:

> I asked you in the very beginning to listen very, very closely to the defendant's interview. . . . And you also got to hear the impression that the interview had on [the interviewing officer].
>
> You heard the defendant's voice inflection on his denials. You heard him not outright deny that pictures were taken. He just denied having them. . . .
>
> You heard him basically answer questions with other questions.

(Document 8-5 at 8.)

The Court finds that the prosecutor's comments do not improperly refer to the Petitioner's failure to testify.  The Supreme Court has explained that when determining whether a prosecutor's comments have violated a defendant's right to remain silent, the "prosecutorial comment must be examined in context." *United States v. Robinson*, 485 U.S. 25, 33 (1988).  Examining the comments in context, the prosecutor, when commenting about the Petitioner's lack of denial, was making observations about the Petitioner's recorded interview with police conducted prior to his arrest.  Before making the comments about the Petitioner's lack of denial, the prosecutor commented that she asked the jury to "listen very, very closely to [the Petitioner's] interview", and that it provided them the opportunity "to hear the impression that the interview had on" the interviewing officer.  (Document 8-5 at 8.)  Additionally, when she commented about the Petitioner's lack of denial, she referenced the Petitioner's "voice inflection," denial of having the pictures, and tendency to "answer questions with other questions."  (*Id.*)  These comments, in addition to her comments about the Petitioner's lack of denial, all indicate that the prosecutor was

19

directing the jury's attention to the recorded interview that was presented to them.    The prosecutor's comments about Petitioner's lack of denial were made within the context of his interview as opposed to a reference about his failure to testify.  The West Virginia Supreme Court reached a similar conclusion when analyzing this issue, and therefore, it was not unreasonable for it to conclude that the prosecutor's comments were not improper.    This objection must be overruled, as well.

## CONCLUSION

Wherefore, after thorough de novo review and careful consideration of the Petitioner's objections, including the objection based on the comments of the prosecutor, the Court **ADOPTS** and incorporates herein the findings and recommendation of the Magistrate Judge as contained in the *Proposed Findings and Recommendation*, and **ORDERS** that the *Petitioner's Objections to Proposed Findings and Recommendations* (Document 20) be **OVERRULED**, the Petitioner's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Document 1) be **DENIED**, the *Respondent's Motion for Summary Judgment* (Document 10) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE** and **REMOVED** from this Court's docket.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge Reeder, to counsel of record, and to any unrepresented party.

ENTER:        March 19, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

20